CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/20/2024
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
    DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 6:24cr00025 |
| v. | In Violation of: |
| JENNIFER LEIGH PETERS, and BRENDON COLE WEBBER | 18 U.S.C. § 371; 18 U.S.C. §§ 1030(a)(2)(C); (c)(2)(A); 18 U.S.C. § 1505; 18 U.S.C. § 1519; and 18 U.S.C. § 1001(a)(2) |

## INDICTMENT

The Grand Jury charges that:

### INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment, except where otherwise stated:

1. Defendant BRENDON COLE WEBBER ("WEBBER") was a resident of Lynchburg, Virginia, and Defendant JENNIFER LEIGH PETERS ("PETERS) was a resident of Madison Heights, Virginia. Lynchburg and Madison Heights are both located in the Western District of Virginia.

2. Beginning in or about 2007, PETERS became employed by the Lynchburg Community Corrections & Pretrial Services (herein, "LCCPS"). LCCPS supervised probation for pretrial criminal defendants and certain post-conviction defendants charged in the Lynchburg General District Court. Among other duties, LCCPS probation officers were responsible for preparing reports and assessments for court, testifying in court as necessary, conducting substance abuse screening, monitoring conditions of bond or release, and complying with applicable laws related to the privacy and dissemination of criminal histories and other sensitive information.

USAO 2024R00311

3. From the time that PETERS joined LCCPS until at least 2023, she served as a probation officer. In 2023, PETERS assumed the role of Acting Director of the LCCPS office, the most senior role in the office. In her role at LCCPS, PETERS was, directly and indirectly, responsible for supervising probationers' compliance with the terms of their supervision and the other previously described obligations.

4. Beginning in 2022 and through November 2023, WEBBER was on probation and supervised by LCCPS. At times, PETERS directly supervised WEBBER's probation.

5. Sometime in 2023, while WEBBER was on probation supervised by LCCPS, PETERS and WEBBER began a romantic relationship. PETERS did not report the relationship to her employer, LCCPS.

6. Given her role at LCCPS, PETERS had access to certain non-public databases that contained confidential information concerning past and active law enforcement matters, including the following:

   a. Records Management System – PETERS had authorized access to the Lynchburg Police Department's Records Management System (herein, "RMS"). RMS allowed authorized users to run searches for individuals by name and other unique identifiers. Authorized RMS users could also view and print Lynchburg Police Department records. PETERS possessed a unique RMS user identification and a password is required to access the system. PETERS was only one of two LCCPS employees who had authorized access to RMS.

   b. Officer of the Court Record Access – PETERS had access to the Officer of the Court Record Access (herein, "OCRA"). OCRA allowed authorized users to search publicly available and publicly unavailable court filings in the Lynchburg General

District Court, including search warrants and affidavits supporting search warrants. PETERS possessed a unique OCRA user identification and a password is required to access the system.

### Searches of Non-Public Law Enforcement Databases

7. Beginning on an unknown date, but as early as November 8, 2023, WEBBER used PETERS' RMS access to run searches and review non-public law enforcement material related to himself and his associates, including on or about the following dates:

    a. On or about November 8-9, 2023, WEBBER used PETERS' RMS access to search and review non-public criminal records related to himself and at least one other person.

    b. On or about November 10-11, 2023, WEBBER used PETERS' RMS access to search and review non-public criminal records related to himself and at least seven others.

    c. On or about November 16-17, 2023, WEBBER used PETERS' RMS access to search and review non-public criminal records associated with himself and at least twenty others, including individuals believed to be associated with WEBBER and WEBBER FAMILY MEMBER-1.

    d. On or about November 26-27, 2023, WEBBER used PETERS' RMS access to search and review non-public criminal records related to FAMILY MEMBER-1 and at least nine other individuals.

8. PETERS facilitated WEBBER's access to RMS by entering her unique virtual private network (VPN) username and password to log into the VPN, and then entering her unique RMS username and password.

9. The records that WEBBER reviewed contained non-public information, including information related to confidential law enforcement sources.

10. WEBBER disseminated some of the non-public information that he obtained from PETERS' RMS access to known and unknown associates.

11. Between November 11 and November 27, 2023, WEBBER recorded at least twenty-five videos of himself using PETERS' RMS access to search for and review non-public criminal records. In at least one video, PETERS can be heard in the background instructing WEBBER on how to use her computer. WEBBER and PETERS knew WEBBER was not authorized to access RMS, a protected computer system.

12. PETERS provided WEBBER with access to the RMS platform, including by entering in her unique log-in credentials for the RMS system.

### PETERS Terminated WEBBER's Probation

13. On or about November 27, 2023, PETERS entered certain entries into WEBBER's case file indicating that WEBBER had completed certain probation milestones. PETERS back-dated the entries and entered them under a subordinate pretrial officer's name to avoid the appearance that she was abusing her position of public trust.

14. That same day, PETERS drafted a letter on LCCPS letterhead advising a Lynchburg General District Court Judge that LCCPS was terminating WEBBER's probation for good behavior.

15. PETERS instructed a subordinate pretrial officer to sign the letter and then submitted it the court and terminated WEBBER's probation.

### November 29, 2023 Hotel Incident

16. On or about November 29, 2023, WEBBER was involved in an incident at a hotel

in Lynchburg, Virginia. Lynchburg Police Department (LPD) searched the hotel room and located drug paraphrenia, as well as a loaded firearm recovered under clothing that WEBBER was seen wearing earlier the same day and next to keys to PETERS' vehicle. WEBER had driven PETERS' vehicle to the hotel that evening.

17. PETERS had provided WEBBER with the cellular telephone that he was using that evening. The phone was seized by LPD.

18. On or about November 30, 2023, the Commonwealth's Attorney of the City of Lynchburg charged WEBBER with unlawfully possessing a firearm and obtained a warrant for his arrest.

19. Beginning on an exact date unknown, but on at least thirteen occasions between November 30 and December 19, 2023, PETERS used her access to OCRA to review law enforcement records related to the November 29, 2023 incident involving WEBBER. PETERS disseminated information to WEBBER and WEBBER FAMILY MEMBER-1.

### WEBBER's Flight from Lynchburg

20. On a date unknown but sometime after November 29, 2023, PETERS provided WEBBER with a second cellular phone.

21. On or about December 15, 2023, the LPD and the U.S. Marshal Service ("USMS") undertook collective efforts to locate WEBBER on his pending firearm charge (the "USMS Task Force").

22. On or about December 15, 2023, members of the USMS Task Force approached PETERS at her residence and notified her of the active manhunt for WEBBER. The USMS Task Force searched PETERS' residence for WEBBER and did not locate him. PETERS falsely stated that she did not know where WEBBER was located and agreed to notify the USMS Task Force if

WEBBER contacted her. In fact, PETERS had been in regular communication with WEBBER nearly every day since November 29, 2023.

23. Specifically, PETERS made the following false statements to the USMS Task Force:

    a. PETERS said she did not know where WEBBER was located,

    b. PETERS said she did not know where WEBBER went, and

    c. PETERS said she had not seen WEBBER in weeks.

24. PETERS statements were false and were material to a matter within the jurisdiction of the U.S. Marshals Service. She made those false statements knowingly and willfully.

25. On or about December 19, 2023, PETERS drove WEBBER from Lynchburg, Virginia, to a residence in Hughestown, Pennsylvania. PETERS paid for a hotel room that she shared with WEBBER while enroute to Hughestown, Pennsylvania.

26. PETERS was in communication with WEBBER while he was in Hughestown, Pennsylvania, and on at least one occasion, sent him money.

27. On or about January 9, 2024, law enforcement located WEBBER in Hughestown, Pennsylvania and took him into custody.

<u>January 11, 2024 Search of LCCPS and PETERS' False Statements</u>

28. On or about January 11, 2024, law enforcement executed a search warrant at LCCPS in connection with its investigation into the law enforcement database searches outlined above.

29. Law enforcement also attempted to execute a search warrant for PETERS' personal cell phone. However, PETERS became aware of law enforcement's presence at LCCPS and gave her personal cell phone to a third-party. PETERS subsequently retrieved the personal cell phone

and disposed of it in a local landfill.

30. Following execution of the search warrant at LCCPS, PETERS voluntarily participated in an interview and made false statements to federal law enforcement officers about her relationship with WEBBER and his access to non-public law enforcement databases. PETERS spoke with agents of the Federal Bureau of Investigation ("FBI"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and LPD.

31. PETERS knowingly and willfully made the following false statements:

    d. PETERS falsely stated, by implication, that she had not had any physical contact with WEBBER since December 15, 2023;

    e. PETERS falsely stated that she did not know if WEBBER had an active phone number;

    f. PETERS falsely stated she had not been in WEBBER's presence;

    g. PETERS falsely stated that WEBBER had not told her that he was going to flee law enforcement;

    h. PETERS falsely stated she did not know where her cell phone was located;

    i. PETERS falsely stated she did not know that WEBBER was going to leave Lynchburg;

    j. PETERS falsely stated she had not disseminated or given a copy of any material from RMS to anyone;

    k. PETERS falsely stated she had not disseminated or otherwise given information obtained from RMS to anyone;

    l. PETERS falsely stated she did not have an intimate relationship with WEBBER;

  m. PETERS falsely stated she did not know how WEBBER had gotten to Pennsylvania;

  n. PETERS falsely stated she did not know if one could obtain search warrant affidavits from OCRA;

  o. PETERS falsely stated she had not knowingly let someone use her work computer;

  p. PETERS falsely stated that she had not given her cell phone to anyone else when law enforcement was executing the search warrant;

  q. PETERS falsely stated she had not seen WEBBER since November 29, 2023;

  r. PETERS falsely stated she had not seen WEBBER since December 15, 2023;

  s. PETERS falsely stated she did not know that WEBBER was leaving Lynchburg, Virginia;

  t. PETERS falsely stated WEBBER did not travel with her to Pennsylvania;

  u. PETERS falsely stated she did not drop off WEBBER in Pennsylvania; and

  v. PETERS falsely stated she did not communicate with WEBBER while he was in Pennsylvania on any communications applications other than text messaging and Facebook Messenger.

**COUNT ONE**
**18 U.S.C. § 371**
*(Conspiracy against the United States)*

32. The allegations detailed in Paragraphs 1 through 31 are incorporated herein by

reference.

33. Beginning on a date unknown, but as early as November 11, 2023 and continuing through January 9, 2024, in the Western District of Virginia and elsewhere, the defendants, JENNIFER LEIGH PETERS and BRENDON COLE WEBBER, knowingly and willfully conspired and agreed together and with each other, to have BRENDON COLE WEBBER intentionally access a computer without authorization, and thereby obtain information from a protected computer.

34. WEBBER took overt acts in furtherance of the conspiracy, including unlawfully accessing a protected computer between at least November 8 and November 27, 2023, as alleged in paragraphs 7-10.

35. PETERS took overt acts in furtherance of the conspiracy, including knowingly and willfully providing WEBBER with access to a protected computer between at least November 8 and November 27, 2023, as alleged in paragraphs 7-10.

36. All in violation of Title 18, United States Code, Sections 18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(A) and 371.

### COUNT TWO
### 18 U.S.C. §§ 1030(a)(2)(C) and (c)(2)(A); and § 2
*(Access of a Protected Computer Without Authorization)*

37. The allegations detailed in Paragraphs 1 through 31 are incorporated herein by reference.

38. On or about November 10-11, 2023, in the Western District of Virginia and elsewhere, the defendant, BRENDON COLE WEBBER, aided and abetted by JENNIFER LEIGH PETERS, intentionally accessed a computer without authorization, and thereby obtained

information from a protected computer.

39. All in violation of Title 18, United States Code, Sections 1030(a)(2)(C) and 1030(c)(2)(A), and 2.

## COUNT THREE
### 18 U.S.C. §§ 1030(a)(2)(C) and (c)(2)(A); and § 2
*(Access of a Protected Computer Without Authorization)*

40. The allegations detailed in Paragraphs 1 through 31 are incorporated herein by reference.

41. On or about November 16, 2023, in the Western District of Virginia and elsewhere, the defendant, BRENDON COLE WEBBER, aided and abetted by JENNIFER LEIGH PETERS, intentionally accessed a computer without authorization, and thereby obtained information from a protected computer.

42. All in violation of Title 18, United States Code, Sections 1030(a)(2)(C) and 1030(c)(2)(A), and 2.

## COUNT FOUR
### 18 U.S.C. §§ 1030(a)(2)(C) and (c)(2)(A); and § 2
*(Access of a Protected Computer Without Authorization)*

43. The allegations detailed in Paragraphs 1 through 31 are incorporated herein by reference.

44. On or about November 17, 2023, in the Western District of Virginia and elsewhere, the defendant, BRENDON COLE WEBBER, aided and abetted by JENNIFER LEIGH PETERS, intentionally accessed a computer without authorization, and thereby obtained information from a protected computer.

45. All in violation of Title 18, United States Code, Sections 1030(a)(2)(C) and 1030(c)(2)(A), and 2.

## COUNT FIVE
## 18 U.S.C. §§ 1030(a)(2)(C) and (c)(2)(A); and § 2
### *(Access of a Protected Computer Without Authorization)*

46. The allegations detailed in Paragraphs 1 through 31 are incorporated herein by reference.

47. On or about November 26-27, 2023, in the Western District of Virginia and elsewhere, the defendant, BRENDON COLE WEBBER, aided and abetted by JENNIFER LEIGH PETERS, intentionally accessed a computer without authorization, and thereby obtained information from a protected computer.

48. All in violation of Title 18, United States Code, Sections 1030(a)(2)(C) and 1030(c)(2)(A), and 2.

## COUNT SIX
## 18 U.S.C. § 371
### *(Conspiracy against the United States)*

49. The allegations detailed in Paragraphs 1 through 31 are incorporated herein by reference.

50. Beginning on a date unknown, but as early as December 19, 2023 and continuing through January 9, 2024, in the Western District of Virginia and elsewhere, the defendants, BRENDON COLE WEBBER and JENNIFER LEIGH PETERS knowingly and willfully conspired and agreed together and with each other, to corruptly obstruct and impede, or endeavor to obstruct and impede, the due and proper administration of the law under which a pending proceeding, a U.S. Marshals Service fugitive apprehension mission, before the U.S. Marshal Service, by transporting the subject of that mission across state-lines to a different state.

51. PETERS took overt acts in furtherance of the conspiracy, including on December 19-20, 2023, knowingly and willfully driving WEBBER across state lines to avoid his apprehension, as outlined in paragraphs 20-27.

52. WEBBER took overt acts in furtherance of the conspiracy, including knowingly and willfully riding in a vehicle being driven by PETERS across state lines to avoid apprehension, as outlined in paragraphs 20-27.

53. All in violation of Title 18, United States Code, Sections 371, and 1505.

## COUNT SEVEN
## 18 U.S.C. § 1505
*(Obstruction of Proceeding Before United States Agency)*

54. The allegations detailed in Paragraphs 1 through 31 are incorporated herein by reference.

55. Beginning on a date unknown, but as early as December 19, 2023 and continuing through January 9, 2024, in the Western District of Virginia and elsewhere, JENNIFER LEIGH PETERS, corruptly obstructed and impeded, or endeavored to obstruct and impede, the due and proper administration of the law under which a pending proceeding, a U.S. Marshals Service fugitive apprehension mission, before the U.S. Marshal Service, by transporting the subject of that mission across state-lines to a different state.

56. All in violation of Title 18, United States Code, Section 1505.

## COUNT EIGHT
## 18 U.S.C. § 1519
*(Destruction of Evidence)*

57. The allegations detailed in Paragraphs 1 through 31 are incorporated herein by reference.

58. On or about January 11, 2024, in the Western District of Virginia, JENNIFER LEIGH PETERS, destroyed a tangible object, to wit, her cellular phone, with the intent to impede, obstruct, or influence the investigation of a matter within the jurisdiction of a department or agency of the United States, to wit, the Federal Bureau of Investigation, and did so knowingly.

59.  All in violation of Title 18, United States Code, Section 1519.

## COUNT NINE
## 18 U.S.C. § 1001(a)(2)
### (*False Representations Made to Agency of the United States*)

60.  The allegations detailed in Paragraphs 1 through 31 are incorporated herein by reference.

61.  On or about January 11, 2024, defendant JENNIFER LEIGH PETERS, did willfully and knowingly make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, by making the following statements to agents of the FBI:

   a. PETERS falsely stated, by implication, that she had not had any physical contact with WEBBER since December 15, 2023;

   b. PETERS falsely stated that she did not know if WEBBER had an active phone number;

   c. PETERS falsely stated she had not been in WEBBER's presence;

   d. PETERS falsely stated that WEBBER had not told her that he was going to flee law enforcement;

   e. PETERS falsely stated she did not know where her cell phone was located;

   f. PETERS falsely stated she did not know that WEBBER was going to leave Lynchburg;

   g. PETERS falsely stated she had not disseminated or given a copy of any material from RMS to anyone;

   h. PETERS falsely stated she had not disseminated or otherwise given information

obtained from RMS to anyone;

i. PETERS falsely stated she did not have an intimate relationship with WEBBER;

j. PETERS falsely stated she did not know how WEBBER had gotten to Pennsylvania;

k. PETERS falsely stated she did not know if one could obtain search warrant affidavits from OCRA;

l. PETERS falsely stated she had not knowingly let someone use her work computer;

m. PETERS falsely stated that she had not given her cell phone to anyone else when law enforcement was executing the search warrant;

n. PETERS falsely stated she had not seen WEBBER since November 29, 2023;

o. PETERS falsely stated she had not seen WEBBER since December 15, 2023;

p. PETERS falsely stated she did not know that WEBBER was leaving Lynchburg, Virginia;

q. PETERS falsely stated WEBBER did not travel with her to Pennsylvania;

r. PETERS falsely stated she did not drop off WEBBER in Pennsylvania; and

s. PETERS falsely stated she did not communicate with WEBBER while he was in Pennsylvania on any communications applications other than text messaging and Facebook Messenger.

62. The statements were false, and PETERS then and there knew that they were false.

63. All in violation of Title 18, United States Code, Section 1001(a)(2).

TRUE BILL this 20Th day of November, 2024.

*signature*
For

CHRISTOPHER R. KAVANAUGH
UNITED STATES ATTORNEY

s/ GRAND JURY FOREPERSON
GRAND JURY FOREPERSON